# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MARGARET T. MMBAGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-cv-01073 |
| | ) | Judge Echols |
| TENNESSEE STATE UNIVERSITY, | ) | Magistrate Judge Bryant |
| | ) | |
| Defendant. | | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On November 30, 1995, Plaintiff was hired at TSU as an Associate Investigator/Plant Pathologist in McMinnville Research Station with a salary of $44,000. (Deposition of Plaintiff (hereinafter "Pl. Dep."), pp. 43-46; Exhibit (hereinafter "Ex.") 1, 2 to Pl. Dep.).

**RESPONSE: Admitted**

2. The position Plaintiff accepted was a one hundred percent (100%) research, non-tenured tracked position for a twelve (12) month term. (Pl. Dep., pp. 43-45; Ex. 1, 2 to Pl. Dep.; Dr. Stephen H. Kolison's deposition (hereinafter "Kolison Dep."), p. 12).

**RESPONSE: Admitted**

3. Tenure-track positions are generally for faculty members whose primary focus is to teach and work with students, and it takes between four to six years to gain tenure; non-tenure-track positions are generally designed to hire researchers whose job is primarily to conduct research, with some teaching responsibility. (Kolison Dep., p. 12).

**RESPONSE: Admitted**

4.  Plaintiff has never been in a tenure-track position while employed at TSU, and she has never

applied to get a tenure-track position.  (Kolison Dep., pp. 12-13).

**RESPONSE: Admitted**

5.  At the time of Plaintiff's initial employment, all research positions were twelve (12) month

positions that are renewable at the end of the twelve (12) month term, with no opportunity for

advancement.  (Pl. Dep., pp. 36, 44).

**RESPONSE: Admitted**

6.  Plaintiff's employment agreement states that the agreement may be terminated upon thirty

(30) days notice, except during the probationary period within which there is no requirement for

notice prior to termination of the employment agreement.  (Pl. Dep., pp. 45, 47; Ex. 2 to Pl.

Dep.).

**RESPONSE:  Admitted**

7.  Prior to Dr. Kolison's arrival at TSU, there was not a promotion system in place for the

department in which Plaintiff worked in McMinnville.  (Kolison Dep., p. 13).

**RESPONSE:  Admitted**

8.  Dr. Kolison requested authorization from the Tennessee Board of Regents to reorganize and change the titles for the Associate Investigators in McMinnville from research staff to research faculty.  (Kolison Dep., p. 23).

**RESPONSE:  Admitted**

9.  Dr. Kolison put a system in place through which researchers could apply to be reclassified to higher ranking positions based upon attainment of certain clearly established requirements. (Kolison Dep., pp. 13-16).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 3**

10.  Plaintiff remained in the position of Associate Investigator/Plant Pathologist until 2002 when Plaintiff was administratively reclassified to a Assistant Research Professor, which is a higher rank than the Associate Investigator/Plant Pathologist position and comes with higher pay.  (Pl. Dep., p. 53; Kolison Dep., p. 23).

**RESPONSE: Admitted**

11.  As a result of the reclassification, Plaintiff's annual salary was increased by $5,000.  (Pl. Dep., p. 57).

RESPONSE:  **Denied.  See Plaintiff's affidavit, para. 4**

12.  The position of Research Assistant Professor was also a non-tenured track position with a one (1) year term of employment, after which the employment contract could be terminated or non-renewed for lack of funds.  (Pl. Dep., pp. 53-54).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 5**

13.  Beginning in 2002, the McMinnville Station where Plaintiff worked had an application procedure for reclassification through which an employee may apply to be reclassified to a higher position.  (Pl. Dep., pp. 54-56; Kolison Dep., p. 13).

**RESPONSE:  Admitted**

14.  In 2002, all research faculty were administratively given a default rank of Assistant Research Professor and given an opportunity to apply for reclassification to a higher position within the same year.  (Pl. Dep., pp. 55-56; Deposition of Roger Sauve (hereinafter "Sauve Dep."), p. 8; Kolison Dep., p. 21).

**RESPONSE:  Admitted**

15.  There was an application process in place which contained guidelines for qualification for the desired position.  (Pl. Dep., p. 58).

4

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 6**

16.  Each position required specific guidelines to be met in order to qualify for the position.  (Pl.

Dep., p. 58).

**RESPONSE:  Admitted**

17.  Plaintiff was aware of the specific criteria required for each position before she applied for

the position.  (Pl. Dep., pp. 60-63, 79).

**RESPONSE:  Denied. Denied.  See Plaintiff's affidavit, para.7**

18.  The reclassification applications are sent to an independent panel to review all of the criteria

and make a recommendation, based upon their review of the application, whether to approve or

deny the candidates request for reclassification.  (Pl. Dep., pp. 59-61; Sauve Dep., pp. 10-11).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 8**

19. Dr. Kolison is not on the panel of persons who review applications for reclassification.

(Kolison Dep., p. 17).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 9**

20. Research positions increase in rank from Research Assistant Professor to Research Associate Professor to full Research Professor; none of the positions are tenure-track positions, they are all research-track positions. (Pl. Dep., p. 58; Kolison Dep., p. 22).

**RESPONSE: Admitted**

21. After being reclassified to Research Assistant Professor Plaintiff applied directly for the position of full Research Professor in 2002. (Pl. Dep., pp. 58-59; Kolison Dep., pp. 15-16).

**RESPONSE: Denied. See Plaintiff's affidavit, para.10**

22. At the time that Plaintiff applied to become full Research Professor, and skip the rank of Associate Professor in 2002, Plaintiff was aware of the required criteria to become Associate Professor as well as the required criteria to become full Research Professor. (Pl. Dep., pp. 60-63, 79).

6

**RESPONSE: Denied. See Plaintiff's affidavit, para. 11**

23. When Plaintiff applied for the full Research Professor position in 2002, one of the requirements for full Research Professor was a Grantsmanship requirement, requiring a candidate to have "brought in enough money to hire either a post-doc or a research assistant, some form of development to the program, and also have for three consecutive years prior to 2002; and pay your salary, 25 percent of your salary, for at least the three consecutive years before 2002." (Pl. Dep., p. 62).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 12**

24. Another requirement in 2002 for full Research Professor was to have at least three "publications in peer-reviewed articles" each year for ten consecutive years. (Pl. Dep., p. 65).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 13.**

25. In 2002, an applicant must have met fully eight of the nine listed criteria in order to qualify

   for full Research Professor. (Pl. Dep., pp. 71, 74-75, 77-78; Kolison Dep., p. 16).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 14**

26. In 2002, the Grantsmanship criteria and the publications in peer-reviewed articles criteria

were required criteria that had to be met in order to qualify for full Research Professor. (Pl.

Dep., pp. 68-69, 71, 74-75, 77-78; Kolison Dep., pp. 16-17).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 15.**

27. In 2002, Plaintiff did not meet the Grantsmanship requirement, the publications in peer-

reviewed articles requirement or the teaching requirement. (Pl. Dep., pp. 62-63, 68-69; Kolison

Dep., pp. 17, 19-20).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 16.**

28. The final decision of whether an applicant is granted a requested reclassification lies with the Vice President of faculty and affairs, Dr. Augustus Bankhead; Dr. Kolison can only make a recommendation regarding reclassification. (Kolison Dep., pp. 17, 19).

**RESPONSE: Admitted**

29. Dr. Kolison reports to Dr. Bankhead. (Kolison Dep., p. 17).

**RESPONSE: Admitted**

30. Dr. Kolison does not have the authority or power to fire, demote, promote or transfer Plaintiff. (Kolison Dep., p. 18).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 17.**

31. A candidate is allowed to make only one application for reclassification per year; if your application is not approved, you remain in the position you were in prior to your application. (Pl. Dep., p. 79; Sauve Dep., p. 12).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 18.**

9

32. Dr. Roger Sauve encouraged Plaintiff to apply for the Associate Research Professor position because he did not feel that Plaintiff, who had less experience than he did, would qualify for the full Research Professor position based on the requirements that were set. (Sauve Dep., p. 13).

**RESPONSE: Admitted**

33. The panel that reviewed Plaintiff's application for full Research Professor in 2002 denied the application because she did not meet the qualifications. (Pl. Dep., p. 79; Kolison Dep., pp. 16-17).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 19.**

34. Based on the panels review of Plaintiff's application for reclassification and determination that she was not qualified for the position, Dr. Kolison did not recommend to Dr. Bankhead that Plaintiff be reclassified to full Research Professor. (Kolison Dep., pp. 17-18).

**RESPONSE: Admitted**

35.  Plaintiff appealed the panel's recommendation denying her application in 2002 after Dr.

Kolison asked her to appeal the panel's decision.  (Pl. Dep., pp. 79-80).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 20.**

36.    Despite being allowed only one application per year and being denied the full Research

professor position, Plaintiff was nonetheless reclassified to the position of Associate

Professor in January 2003 retroactive to October 2002 as a result of Dr. Kolison's

recommendation to Dr. Bankhead, the vice-president, that Plaintiff be reclassified to

Associate Professor with an increased salary effective October 2002.  (Pl. Dep., pp. 79-

80, 82, 92, 103; Kolison Dep., p. 21).

**RESPONSE:  Admittted**

37.  In 2004, Plaintiff again applied for reclassification to full Research Professor.  (Pl.

Dep., pp. 115-116).

**RESPONSE:  Admitted**

11

38.  Plaintiff was aware of the criteria required to qualify for full Research Professor prior to making her application in 2004.  (Pl. Dep., p. 116).

**RESPONSE:  Admitted**

39.  Plaintiff was aware that she had to fully meet eight of the qualification requirements, and that all applicants must meet the Grantsmanship requirement and the refereed journal requirement.  (Pl. Dep., pp. 116-117).

**RESPONSE:  Admitted**

40.  Plaintiff was aware that the 2004 applications were reviewed based upon accomplishments achieved in the previous four years.  (Pl. Dep., p. 117).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 21.**

41.  Again, the application was sent to a panel of reviewers to determine whether an applicant was qualified for the position applied for.  (Pl. Dep., p. 117).

**RESPONSE:  Admitted**

42. In 2004, Plaintiff did not meet the refereed journal requirement. (Pl. Dep., p. 118).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 22.**

43. In 2004, Plaintiff did not meet the Grantsmanship requirement. (Pl. Dep., p. 119).

**RESPONSE: Admitted**

44. In 2004, the panel of application reviewers did not approve Plaintiff's application and did not recommend Plaintiff for the position of full Research Professor. (Pl. Dep., p. 119).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 23**

45. A group of scientists, Enefiok P. Ekanem, Roger J. Sauve, Fisseha Tegegne, and Plaintiff, appealed the panel's decisions denying them the rank of full Research Professor to the University Vice President, Dr. Augustus Bankhead. (Pl. Dep., p. 120).

**RESPONSE: Admitted**

13

46.  In 2006, Plaintiff applied for the rank of full Research Professor.  (Sauve Dep., p. 9).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 24.**

47.  Plaintiff met the qualifications for the position and was reclassified to full Research

Professor in 2006.  (Sauve Dep., p. 9).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 25.**

48.  There were no instances of discrimination against Plaintiff based on her sex in 2004.

(Pl. Dep., p. 121).

**RESPONSE:  Admitted**

49.  Plaintiff filed a sexual harassment complaint against Dr. Kolison on March 4, 2004,

using the Defendant's internal Equal Employment Opportunity office.  (Pl. Dep., p. 13).

14

**RESPONSE:  Admittted**

 

50.  Plaintiff contacted Mario Keri in Canada and invited him to join the staff at TSU. (Kolison Dep., p. 29).

**RESPONSE:  Admitted**

 

51.  Plaintiff submitted an appointment recommendation for Mr. Keri to her supervisor, Dr. Nick Gawel, who in turn sent it to Dr. Kolison for approval.  (Kolison Dep., p. 30).

**RESPONSE:  Admitted**

 

52.  Dr. Kolison approved the appointment but he was not involved in any of the discussions concerning the hiring of Mr. Keri.  (Kolison Dep., p. 30).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 26.**

 

53.  It was Plaintiff's decision to hire Mr. Keri.  (Kolison Dep., p. 30).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 27**

54.  There were not any changes in Plaintiff's employment contract or the terms of her employment after she filed her complaint.  (Kolison Dep., p. 32).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 28**

55.  TSU has guidelines that dictate the hourly rate of student assistants depending on the position they are employed in; Dr. Kolison's only input on an assistant's hourly rate is to make a recommendation for higher pay in an effort to attract more people.  (Kolison Dep., pp. 36-37).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 29.**

56.  In 2000, the subject of Plaintiff attending leadership training when courses became available came up.  (Pl. Dep., pp. 18-19).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 30.**

57. Plaintiff did not know whether there was a leadership training program available or scheduled in 2001. (Pl. Defendant., p. 20).

**RESPONSE: Admitted**

58. Plaintiff approached Dr. Kolison about her desire to become an administrator and asked if there was any training he could provide her, and Dr. Kolison told her that there are several programs that she could attend to enhance her leadership skills but he would have to look into it and get back in touch with her about it. (Kolison Dep., p. 40).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 31**

59. Dr. Kolison advised Plaintiff that he would have to consult with her supervisor, Dr. Gawel, but Plaintiff was opposed to Dr. Kolison speaking to Dr. Gawel about it because she felt Dr. Gawel would become jealous if Plaintiff received leadership training and he did not. (Kolison Dep., pp. 40-41).

**RESPONSE: Denied. See Plaintiff's affidavit, para. 32.**

60.  Dr. Kolison advised Plaintiff that he would not look into the leadership training for her unless he spoke to Dr. Gawel.  (Kolison Dep., p. 41).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 33.**

61.  Dr. Kolison sent a memo to Dr. Gawel to let him know that Plaintiff made the request.  (Kolison Dep., p. 41).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 34.**

62.  The leadership training institutes do not get scheduled immediately, there is a procedure that must be followed before an applicant may attend; some applicants apply a year or two prior to actually attending.  (Kolison Dep., p. 41).

**RESPONSE:  Admitted for purposes of summary judgment only.**

63.  Once Dr. Gawel approved Plaintiff's request, Dr. Kolison investigated when the next class would start and nominated Plaintiff and another staff member for the leadership training.  (Kolison Dep., pp. 41-42).

18

**RESPONSE:  Admitted for purposes of summary judgment only**


      64.  Plaintiff graduated from the leadership training on March 5, 2003.  (Kolison Dep., p. 42).

**RESPONSE:  Admitted**


      65.  In the spring of 2002, IAgER widely advertised a position as a principal investigator and team coordinator of the environmental protection enhancement research team based in Nashville, Tennessee.  (Kolison Dep., p. 43).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 35.**


      66.  Plaintiff approached Dr. Kolison and asked if it would be appropriate for her to apply for the position.  (Kolison Dep., p. 43).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 36**

67.  Dr. Kolison responded that there was nothing wrong with her applying for the position and told her that her application would be accepted and reviewed.  (Kolison Dep., p. 43).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 37.**

68.  In March 2003, Dr. Kolison was invited to attend the commencement marking the conclusion of Plaintiff's leadership training.  (Kolison Dep., p. 44).

**RESPONSE:  Admitted for purposes of summary judgment only**

69.  Plaintiff and Dr. Ekanem requested and were approved for financial assistance for international travel to a foreign country to conduct sponsored research; then other scientists, Dr. Safdar and Dr. Dushaja, made similar requests and were denied the opportunity because there were insufficient funds to support their travel and they got very upset that some people got the funds and others did not.  (Kolison Dep., pp. 44-45).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 38.**

20

70.  In order to assure fairness, Dr. Kolison asked that if anyone wanted to seek funds for sponsored research to send the request to his office; if he agreed with the premise and did not have the funds to support it then he would send a letter to sponsored research advising that he did not have the funds and ask them to support the program; if he did have the funds then he would provide the funds.  (Kolison Dep., p. 45).

**RESPONSE:  Admitted for purposes of summary judgment only**

71.  Dr. Kolison has the discretion to appoint staff members to various committees. (Kolison Dep., p. 51).

**RESPONSE:  Admitted for purposes of summary judgment only**

72.  In January 2006, after the Plaintiff's complaint was filed, Dr. Kolison appointed Plaintiff to the safety committee, a very critical committee in the institute dealing with safety compliance issues.  (Kolison Dep., p. 53).

**RESPONSE:  Admitted**

73.  Plaintiff sent Dr. Kolison an email asking why she was not appointed to any committees; Dr. Kolison responded that he was willing to appoint her to committees but

lately she had appeared not very enthusiastic about what was going on in the department, and Dr. Kolison reminded Plaintiff that she had been voted off of the seminar committee by her colleagues for lack of participation.  (Kolison Dep., p. 54).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 39.**

74.  Dr. Kolison asked her to show that she was interested in serving on a committee and then he would find a committee to appoint her to; Plaintiff did not respond to Dr. Kolison's request.  (Kolison Dep., p. 54).

**RESPONSE:  Denied.  See Plaintiff's affidavit, para. 40**

Respectfully submitted,


/s/ James L. Harris (TN BPR # 014173)
2400 Crestmoor Road, Ste. 324
Nashville, TN 37215
615-386-7143
Attorney for plaintiff

/s/Lawrence D. Wilson (TN BPR # 4076
2400 Crestmoor Road, Ste. 109
Nashville, TN 37215
615-386-7145
Attorney for plaintiff

**CERTIFICATE**

I certify that on this 26th day of September, 2007, the foregoing was electronically filed in accordance with the Local Rules of the United States District Court for the Middle District of Tennessee with copy to:

Blind Akwari                          Leslie Ann Bridges
TN Attorney General's Office          TN Attorney General's Office
P.O. Box 20207                        P.O. Box 20207
Nashville, TN 37202                   Nashville, TN 37202

/s/ James L. Harris