**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**


**MARGARET T. MMBAGA,**

        **Plaintiff**

**vs.**                        **No. 3:06-1073**
                                **JUDGE ECHOLS**
                                **MAGISTRATE BRYANT**


**TENNESSEE STATE UNIVERSITY,**

        **Defendant**


**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

INTRODUCTION


Since November 1995, the defendant has employed plaintiff as a researcher and/or professor in their Plant Pathology operations in McMinnville, Warren County, Tennessee.

In July 2004, Plaintiff invoked defendant's internal procedures to complain of sexual harassment by Dr. Stephen Kolison, who has been the supervisor of her supervisor, Dr. Nick Gawel. After plaintiff's complaint, Dr. Kolison stated that he would not promote anyone in his organization because of plaintiff's harassment charges made against him. At the time, plaintiff met defendant's job qualifications for promotion. Later, she requested a transfer after observing behavior by Dr. Kolison that led her to conclude he was retaliating against her. The defendant refused plaintiff's transfer request and she appealed denial of her transfer request to defendant's President. Plaintiff has never received a response to her appeal from either the defendant's President or from any of the Vice Presidents to whom her appeal had been referred.

Case 3:06-cv-01073   Document 44   Filed 10/01/07   Page 1 of 12 PageID #: 365

Dr. Kolison and/or Dr. Gawel have engaged in further acts that have either adversely affected the work of plaintiff and/or her subordinates or conferred favorable treatment upon plaintiff's male peers or peers of other races. Defendant has promoted plaintiff to full professorship only in recent months. Also, plaintiff has recently discovered that defendant has failed to compensate her for merit performance in 2005 and 2006, but has compensated her male peers and peers of other nationalities, even though she met the criteria for merit compensation during these two years. Plaintiff has requested such merit pay without success.

<u>FACTS</u>

**Below are what Plaintiff believes to be the pertinent facts of this case which show that her claims of discrimination and retaliation are viable:**

1. Plaintiff slept with Kolison in 2002 because he made it clear that was the only way I would get leadership training. (P. dep. Pg 23)

2. I felt coerced to do so. (P. dep. Pg 24).

3. He told me I could "serve as his wife" on a trip out of town. (P. dep. Pg 15)

4. I became depressed after that. (P. dep. Pg 27).

5. After having sex with Kolison again in February 2002, I refused any further advances. (P. dep. Pg 38)

6. After I was not recommended by a panel for a full professorship, Kolison recommended I appeal. (P. dep. Pg 82).

7. Pending the result of my appeal Kolison made it clear that I would have to sleep with him to get an answer on my appeal. (P. dep Pg 82).

8. In July 2002 Kolison asked me to sleep with him and I refused. (P dep Pg 83).

2

9. I found out later that Kolison was responsible for there being no approval of my appeal.

10. He had told Dr. Bankhead that I had refused the position. (P dep. Pg 89).

11. Following my refusal of his requests for sex, Kolison refused to request an increase in my pay. (P dep. Pg 104).

12. Kolison later denied my request to transfer to the Plant team for no justifiable reason.(P. depo. Pg 121-122).

13. A rule was enacted, which only applied to me, although it appeared to be a blanket rule. (P. dep. Pg 123).

14. Prior to January, 2005, I had filed a complaint against Kolison with TSU EEO which was not fairly dealt with. (P. dep. Pg 125-129).

15. I filed EEOC complaint in January 2005 alleging sexual harassment. (P dep Pg. 124).

16. I received my Right to Sue letter from the EEOC in August, 2006. I filed my lawsuit in November 2006.

17. Kolison retaliated against me for refusing him sexual favors by refusing my request to transfer from environmental to plant team. He forced me to accept an incompetent as my assistant by limiting the field of candidates from which my assistant had to be chosen. (P dep Pg 145-146).

18. Kolison refused to appoint me to committees. (P dep Pg 151).

19. I had been on several committees before I refused sexual relations. (P dep Pg 152).

20. He removed me from the seminar committee for several absences – the same behavior as other members of the committee who were not removed. (P. dep Pg 155-157).

21. I was removed from all committees in 2005 by Kolison because, he said, I was not sufficiently enthusiastic. (P dep 159-160).

22. Kolison appointed all who served on committees. (P dep Pg 160).

3

23. Kolison wouldn't allow anyone who worked for me to be on committee. (P dep Pg 165).
He was quoted as saying that he deliberately left my assistants off of committees and teams.
(P dep Pg 166).

24. He later removed the Post-Docs (Associates) from teams rather than put mine on. (P. depo Pg. 168).

25. My Post-Doc MREMA was not allowed to apply for grants while other Post-Docs were. (P. depo Pg. 177).

26. Kolison took away my power to use and move grant funds. (P. depo Pg. 178).

27. My name was not even listed as a person who has grants – and I have several. (P. depo Pg. 180).

28. This occurred after I filed my EEOC claim. (P. depo Pg 182).

29. Mr. Gawel and Ms. Martin were assigned to "supervise" me in my duties on the search committee – others were not so "supervised". (P depo Pg. 190-191).

30. All of the above started after I complained about Kolison's sexual harassment. (P. depo Pg. 192).

31. Gawel blocked my committee's interview of prospective interviewees, which had been chosen by my committee. (P depo Pg. 6-8).

32. The hiring (of an assistant) was delayed at every stage. (P. depo Pg. 200, Lns 21-24).

33. Even after I gave Gawel the requested information, he continued to ask for more. (Pg 205, Ln 15-20). I was being harassed. (Pg. 206, Ln 6-8).

34. I am still being harassed through negative Memos about everything I do. (Pg. 207, 208, Lns. 1-25).

35. Kolison wouldn't approve me to go on a research mission to Africa as Retaliation. (Pg. 212, Lns 3-6). Even though the loss of my time would have been made up for in other ways. (Pg. 216, Lns. 15-20).

36. Kolison was retaliating which is proven by the fact that he was always pushing for international collaboration – except in my case. (Pg. 217, Ln. 16-21). He did say I could take annual leave and go but then I would receive nothing for supplies and materials or students support. (Pg. 220, Ln. 12-19). I wouldn't get credit for that. (Pg. 221, Ln. 1).

37. I was required to justify my request that an incompetent employee be fired. (Pg. 241, Ln. 11).

38. Kolison and Gawel sided with the employee. (Pg. 242, Ln. 18-25).

39. Being forced to use that employee affected my work performance and my personnel record. (Pg. 244, Ln. 1-25) as well as my reputation. (Pg. 246, Ln. 1-10).

40. Dr. Sauve felt that Kolison harassed him because of Kolison's belief that Sauve had encouraged Mmbaga to file harassment claim. (Sauve depo. Pg. 13).

41. Mmbaga told him that Kolison "might" be sexually harassing her. (Sauve depo. Pg. 22).

42. Kolison admitted that "Lydia", another defendant employee that worked with him, had filed a sexual discrimination claim against him. (Kolison Depo, Pg. 27).

43. Kolison says he did <u>not</u> approve hiring Keri. (Kolison Depo., Pg. 29). Then turned right around and said he <u>did</u> approve hiring Keri. (Kolison Depo., Pg. 30).


<u>ANALYSI</u>

Before reaching the merits, it is useful briefly to review the standards to which trial judges must adhere when faced with a Rule 56 application. It is axiomatic that the court must view not only the facts but also any inferences that can be drawn from those facts in the light most

5

favorable to the non-moving party. Summary judgment is appropriate where, and only where, the record makes it clear that only one party can prevail. These are principles of black-letter law, and exceedingly well-settled.[1] Before summary judgment can be granted, "…it must be clear what the truth is and any doubt as to the existence of a genuine issue of fact will be resolved against the movant."[2] As will be demonstrated, the record before this tribunal and the court below leaves much room for doubt as to "what the truth is."

The instant case presents this court with a superb example of why it is that the authors of arguably the most esteemed of the multi-volume procedure sets have observed that summary judgment "…often has been denied because of the presence of material fact questions involving motive or intent."[3] The word "perception" has also been used in the same context. For whatever reason or reasons, this is an issue to which the Sixth Circuit has not been called upon to attend in an absolutely direct fashion. But, that court has most assuredly recognized the problem. In *Hafford v. Seidner*,[4] the Sixth Circuit was faced with deciding whether or not the record created genuine issues of material fact as to race and/or religion - based discrimination, and hostile work environment, as to a correctional officer who was an African-American Muslim. Both the Magistrate Judge and the U.S. District Judge found no genuine issues, and the plaintiff appealed. This court affirmed the religion-based dismissal, but reversed and remanded on both Title VII race discrimination and hostile work environment, The holding was explicitly based on this court's observation that a jury "could conclude," first, that the employer's response to the

---

[1] *White v. Detroit Edison Co.,* 473 F3d 420 at 424 (6th Cir. 2006). Further citations omitted.

[2]  Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2727.

[3]  Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2732.3

[4]  183 F3d 506 (6th Cir. 1999).

Case 3:06-cv-01073   Document 44   Filed 10/01/07   Page 6 of 12 PageID #: 370

plaintiff's complaints was not "prompt and appropriate corrective action" - a pure matter of motive or intent. Second, the appellate court remanded so that the jury could consider the issue of whether or not racial animus by Hafford's co-workers was augmented by bias against his Islamic faith - yet another pure matter of motive, intent, or perception.

All of which brings us to the issue of witness credibility. Insofar as the relationship between credibility and summary judgment is concerned, the law is very clear. Relying on no less of an authority than the United States Supreme Court, the Sixth Circuit has spoken in no uncertain terms: "In determining whether to grant summary judgment, a court **may not** make determinations of witness credibility [emphasis supplied]."

**Sexual Discrimination**. In the case at bar, the facts present an obvious case of quid pro quo sex discrimination. As a threshold matter, to make out a claim of quid pro quo sexual harassment, a plaintiff is required to show that she was subjected to unwelcome sexual advances, requests for sexual favors, or conduct or communication of a sexual nature. *Henderson v. Walled Lake Consol. Schs*, 469 F.3d 479 (6th Cir. 2006). *Quid pro quo* sexual harassment is characterized as an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments. *Highlander v. K.F.C. Nat. Management Co., 805 F.2d 644, 648 (6th Cir. 1986); Henson v. City of Dundee, 682 F.2d 897, 908 (11th Cir. 1982).*

Plaintiff testified that the only way she could get leadership training would be to have sex with Dr. Kolison. She felt as if she had no other choice. Plaintiff's deposition, pages 23, 24. It was also made clear to Ms. Mmbaga that she would have to sleep with him in order to get an answer on her appeal. Id., page 82. In fact, she was told that "she could serve as his wife" on a

trip out of town. Id., page 15. Based upon these facts there exist material facts in dispute which cannot be adjudicated at the summary judgment phase of this litigation.

**Retaliation.** To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that this was known to defendants; (3) that plaintiff was subjected to adverse action by defendants' agent; and (4) that there was a causal connection between the protected activity and the adverse action. *Henderson v. Walled Lake Consol. Schs, 469 F.3d 479 (6th Cir. 2006).*

In the case, sub judice, Ms. Mmbaga engaged in a protected activity when she filed a complaint against Kolison with TSU. (P. dep. Pg 125-129). The Defendant had knowledge because it was filed with Defendant's internal EEO office. Id.

With respect to an adverse employment action by the Defendant, after Plaintiff was not recommended by a panel for a full professorship, Kolison recommended that she appeal this decision. (P. dep. Pg 82). Pending the result of her appeal, Kolison made it clear that she would have to sleep with him to get an answer on her appeal. (P. dep Pg 82). In July 2002, Kolison asked Plaintiff to sleep with him and she refused. (P dep Pg 83). She found out later that Kolison was responsible for there being no approval of her appeal. He had told Dr. Bankhead that Plaintiff had refused the position, which was false. (P dep. Pg 89). Also, following her refusal of his requests for sex, Kolison refused to request an increase in her pay. (P dep. Pg 104). Kolison later denied her request to transfer to the Plant team for no justifiable reason.(P. depo. Pg 121-122).

Additionally, Kolison retaliated against her for refusing him sexual favors by refusing her request to transfer from environmental to plant team. He forced her to accept an incompetent as her assistant by limiting the field of candidates from which her assistant had to be chosen. (P dep

Pg 145-146).  Kolison refused to appoint her to committees. although she had been on several committees before she refused sexual relations. (P dep Pg 152) (P dep Pg 151).

He removed her from the seminar committee for several absences – the same behavior as other members of the committee who were not removed. (P. dep Pg 155-157).  She was removed from all committees in 2005 by Kolison because, he said, she was not sufficiently enthusiastic which was false. (P dep 159-160).

Kolison appointed all who served on committees. (P dep Pg 160).  He wouldn't allow anyone who worked for Plaintff to be on committee. (P dep Pg 165).  He was quoted as saying that he deliberately left her assistants off of committees and teams. (P dep Pg 166).

He later removed the Post-Docs (Associates) from teams rather than put Plaintiff's on. (P. depo Pg. 168).  Her Post-Doc MREMA was not allowed to apply for grants while other Post-Docs were. (P. depo Pg. 177).  He also  took away her power to use and move grant funds. (P. depo Pg. 178).  Her name was not even listed as a person who has grants – and she has several. (P. depo Pg. 180).

All this occurred after she filed her EEOC claim. (P. depo Pg 182).

Mr. Gawel and Ms. Martin were assigned to "supervise" Plaintiff in her duties on the search committee – others were not so "supervised".  (P depo Pg. 190-191).  All of the above started after she complained about Kolison's sexual harassment. (P. depo Pg. 192).

She is still being harassed through negative Memos about everything she does.  (Pg. 207, 208, Lns. 1-25).  Kolison wouldn't approve her to go on a research mission to Africa as retaliation. (Pg. 212, Lns 3-6),  even though the loss of her time would have been made up for in other ways. (Pg. 216, Lns. 15-20).

All of the above facts plainly demonstrate that Kolison retaliated against Ms. Mmbaga due to her filing a complaint for discrimination and further, for spurning his sexual advances.

All of the above illustrates a tangible employment action. When a plaintiff proves that a tangible employment action has resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. *Keeton v. Flying J, Inc., 429 F.3d 259 (6th Cir. 2005)*.

CONCLUSION

Based upon the above facts and law the Defendant's Motion for Summary Judgment must be denied and this case should be decided by a jury.

Respectfully submitted,

s/James L. Harris (TN BPR # 014173)
2400 Crestmoor Road, Ste. 324
Nashville, TN 37215
615-386-7143
Attorney for plaintiff

s/Lawrence D. Wilson (TN BPR # 4076)
2400 Crestmoor Road, Ste. 109
Nashville, TN 37215
615-386-7145
Attorney for plaintiff

**CERTIFICATE**

I certify that on this 1stday of October, 2007, the original of the foregoing was served by First Class U.S. Mail on:

Robert E. Cooper, Jr.
Blind Akrawi
Civil Litigation and State Services Division
P.O. Box 20207
Nashville, TN 37202

s/James L. Harris